**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **AMOS LOTT SIMMS,** | § | |
| **TDCJ No. 02171652,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **A-20-CV-284-LY** |
| | § | |
| **BOBBY LUMPKIN,[1]  Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court
pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United
States District Court for the Western District of Texas, Local Rules for the Assignment of Duties
to United States Magistrates Judges.

Before the Court are *pro se* Petitioner Amos Lott Simm's Petition for Writ of Habeas
Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent's Response (ECF No. 6), and
Petitioner's Replies (ECF Nos. 9, 10). Having reviewed the record and pleadings submitted by
both parties, the undersigned concludes Petitioner's federal habeas corpus petition should be

---

[1]  The previous named respondent in this action was Lorie Davis. Bobby Lumpkin succeeded Ms. Davis as the Director
of the Texas Department of Criminal Justice, Correctional Institutions Division and is automatically substituted as a
party. FED. R. CIV. P. 25(d).

1

denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. Background

In June 2017, Petitioner was charged by indictment with manufacturing a controlled substance in an amount of 4 grams or more but less than 400 grams. (ECF No. 7-9 at 4.) On November 3, 2017 the State filed a motion to dismiss the indictment, and reindicted Petitioner with one count of delivering a controlled substance in an amount of 4 grams or more but less than 400 grams; the reindictment included an enhancement paragraph listing Petitioner's three prior felony convictions. (ECF No. 7-1 at 3-4.) On November 20, 2017, the judge dismissed the first indictment. (ECF No. 7-9 at 6.)

On December 13, 2017 and pursuant to a plea agreement, Petitioner pled guilty to possession of a controlled substance in an amount of 1 gram but less than 4 grams and was sentenced to five years imprisonment. *State v. Simms*, No. D-1-DC-17-904069 (147th Dist. Ct., Travis Cnty., Tex. Dec. 13, 2017.) (ECF No. 7-1 at 5-10, 13.) Pursuant to the plea agreement, Petitioner agreed he had no right to appeal and waived his right to appeal. (*Id.* at 11.) Petitioner nonetheless filed a direct appeal, but it was dismissed for lack of jurisdiction based on the waiver of his appeal rights. *Simms v. State*, No. 03-18-00575-CR, 2018 WL 4781561 (Tex. App—Austin, Oct. 4, 2018, pet ref'd.) The Texas Court of Criminal Appeals (TCCA) refused Petitioner's Petition for Discretionary Review on December 5, 2018. *Simms v. State*, No. PD-1173-18 (Tex. Crim. App. Dec. 5, 2018.) Petitioner did not file a writ of certiorari in the United States Supreme Court. (ECF No. 1 at 3)

On February 27, 2019, Petitioner filed his first state habeas corpus application. However, because he filed the application referencing the dismissed indictment, the TCCA dismissed the

application without written order on July 7, 2019. *Ex parte Simms*, No. WR-89,947-01. (ECF No. 7-10.) On December 23, 2019, Petitioner filed his second state habeas corpus application, listing the following four grounds of relief:

1. The indictment was fatally flawed;

2. Ineffective assistance of counsel and conflict of interest;

3. His plea was coerced and involuntary; and

4. Ineffective assistance of counsel based on counsel's failure to object to the indictment.

(ECF No. 7-12 at 16-34.) The TCCA denied the application without written order on February 26, 2020. *Ex parte Simms*, No. WR-89,947-02. (ECF No. 7-11.)

Petitioner filed the instant federal habeas petition on March 11, 2020. In it, he raises the same claims that were raised and rejected in his second state writ application. (ECF No. 1.) On May 5, 2020, Respondent filed a response, to which Petitioner replied on July 14, 2020. (ECF Nos. 6, 9-10.)

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a

complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

Petitioner asserts several overlapping claims challenging his indictment, his trial counsel's performance, and his guilty plea. However, because Petitioner voluntarily pled guilty to the conviction he is now challenging, he waived the right to challenge all non-jurisdictional defects in this proceeding. Moreover, each of these claims were rejected by the state court during Petitioner's

state habeas proceedings. Federal habeas relief is therefore unavailable because Petitioner has not shown that the state court's merits adjudication was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *Richter*, 562 U.S. at 101.

*Petitioner's Plea Was Voluntary*

It is axiomatic that a guilty plea is valid only if entered into voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "'real notice of the true nature of the charge against him.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citation omitted). A plea is voluntary if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *United States v. Juarez*, 672 F.3d 381, 385-86 (5th Cir. 2012).

The voluntariness of Petitioner's plea is demonstrated by his signature on the plea agreement, which is entitled "Plea of Guilty, Admonishments, Voluntary Statements, Waivers, Stipulations & Judicial Confession." (ECF No. 7-1 at 5-10). The agreement shows that Petitioner was represented by counsel and includes the following statements:

> I voluntarily enter my plea of GUILTY to the abovementioned offense. I am pleading guilty (or *nolo contendere*) because I am guilty and for no other reason. My plea is entered freely and voluntarily, and without any coercion duress or promise of benefit other than that stated in the plea bargain agreement. I request the Court to consider probating any sentence imposed, and as to the issue of punishment agree that the pre-sentence investigation report of the Community Supervision and Corrections Department may be considered by the Court. . . .

5

> I can read and write the English language; I have read this entire document and
> discussed it fully with my attorney; I understand this document completely,
> including the Court's admonishments, and I am aware of the consequences of my
> plea. My attorney has discussed with me the law and facts applicable to this case,
> and I am satisfied that I have been effectively represented. I understand if an appeal
> is made, written Notice of Appeal must be filed within 30 days of the sentencing
> date.

(*Id.* at 8.) Petitioner initialed the first statement and then signed his name underneath the second

one. *Id*. Trial counsel also signed the plea agreement, affirming that he had "fully consulted with

the defendant and have carefully reviewed with him/her this entire document. I believe s/he is

mentally competent, understands the admonishments, is aware of the consequences of the plea,

and is freely, voluntarily, knowingly and intelligently entering his/her plea of guilty, waiver,

stipulation and judicial confession." *Id*. at 9. Finally, the trial judge signed the document

underneath the paragraph which states

> The Court hereby finds that (1) the Defendant was sane when the alleged offense
> was committed, is mentally competent, is represented by competent counsel,
> understands the nature of the charges against him/her, and has been warned of the
> consequences of a plea of guilty or *nolo contendere*, including the minimum and
> maximum punishment provided by law; (2) the attorney for the Defendant and the
> State consent to and approve the waiver of trial by jury and agree to stipulate the
> evidence and judicial confession in this case; and (3) the Defendant understands the
> consequences of his plea, and the Defendant's plea of guilty, statements, waivers,
> consent, stipulations, and judicial confession were freely, voluntarily, knowingly
> and intelligently made. The Court hereby approves the waiver of a jury trial, all
> other waivers, the consent to stipulate evidence, and judicial confession.

*Id*.

Petitioner's signature on the plea document is *prima facie* proof of the validity of the plea,

*Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994), and is entitled to "great evidentiary weight"

*United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752 F.2d 1079,

1081 (5th Cir. 1985)). By entering a knowing, intelligent, and voluntary guilty plea, a defendant

waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 267

6

(1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013). This rule encompasses errors of constitutional dimension that do not affect the voluntariness of the plea, such as Petitioner's claim concerning the alleged "fatal flaw" in his indictment. *See United States v. Williams*, 577 Fed. App'x 379, 380 (5th Cir. 2014) (waiving claim that indictment was defective) (unpublished); *United States v. Templet*, 431 Fed. App'x 270, 271 (5th Cir. 2011) (same). The waiver likewise includes claims of ineffective assistance of counsel (IAC claims) unless the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (waiving claims of ineffective assistance, except for claims related to voluntariness of plea).

As such, the only claims that survive a guilty plea are those implicating the validity of the plea itself. *Tollett*, 411 U.S. at 267; *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). In the instant petition, Petitioner claims (1) the indictment was "fatally flawed"; (2) his trial counsel provided ineffective assistance by not objecting to the faulty indictment and by failing to prepare for trial, and (3) by failing to prepare for trial, his trial counsel coerced Petitioner into accepting the plea bargain and pleading guilty.

Regarding the indictment claims, i.e. that the indictment is fatally flawed and trial counsel was ineffective when he did not object to it (ECF No. 1 at 6-7), Petitioner fails to demonstrate how these allegations relate in any way to the voluntariness of his guilty plea and does not allege facts suggesting a jurisdictional defect in the indictment. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) ("defects in an indictment do not deprive a court of its power to adjudicate a case"); *United States v. Cothran*, 302 F.3d 279, 283 (5th Cir. 2002) ("*Cotton* demonstrates that standard waiver principles apply to defects in the indictment.") Accordingly, these claims are waived by Petitioner's knowing, voluntary, and intelligent guilty plea.

*Trial Counsel's Performance and the Guilty Plea*

Petitioner's final two claims are interrelated and, if successful, would implicate the voluntariness of his plea: that, because of his trial counsel's deficient performance, Petitioner was coerced into signing the plea agreement. According to Petitioner, his trial counsel failed to investigate the case and prepare for trial; as a result, when the State offered to reduce Petitioner's charge from a first-degree felony to a third-degree felony, counsel abandoned Petitioner in the middle of trial, thereby forcing Petitioner to accept the plea bargain. Because a valid guilty plea waives all non-jurisdictional defects, *see Smith*, 711 F.2d at 682, the Court considers these claims only to the extent they implicate the voluntariness of his plea, *see Hill*, 474 U.S. at 56 (citing *Tollett*, 411 U.S. at 267).

The appropriate standard to evaluate the effectiveness of counsel with regard to a guilty plea is the familiar *Strickland* two-part test. *Hill*, 474 U.S. at 58 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, Petitioner must demonstrate (1) counsel's performance was deficient, and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. To establish counsel's performance as deficient, a petitioner must first show his counsel's performance fell below "an objective standard of reasonableness." *Id*. at 688–89. In the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S at 59. This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citations omitted). This assessment depends in part on "a prediction of what the outcome of a trial might have been." *Id*.

8

Petitioner alleges his trial counsel took his case to trial, which would have been based off the amended indictment for intent to deliver a controlled substance of 4 grams or more but less than 400 grams. This is a first-degree felony, TEX. HEALTH & SAFETY CODE ANN. §§ 481.1031, .113(d), which—because it was enhanced with Petitioner's three prior felony convictions—carried a sentencing range of at least 15 years and not more than 99 years imprisonment with a maximum fine of $15,000, TEX. PENAL CODE ANN. § 12.42(c)(1). In contrast, Petitioner pled guilty to a third-degree felony, TEX. HEALTH & SAFETY CODE ANN. § 481.116(c), and the State dropped the enhancement paragraph, resulting in a sentencing range of at least 2 years and not more than 10 years imprisonment with a maximum fine of $10,000, TEX. PENAL CODE ANN. § 12.34. Petitioner was sentenced to 5 years imprisonment and no fine was assessed. (ECF No. 7-1 at 13.)

Petitioner now argues that, had his counsel properly investigated his case and prepared for trial, Petitioner would have been acquitted of the indicted charge. The Court understands Petitioner's claim to be as follows: he was indicted on an intent-to-deliver charge, which he was innocent of. However, when the State offered to lower the charge to possession, and trial counsel did not object to this lesser charge, he was forced to plead guilty because (the Court presumes) he was in fact guilty of this charge. In his reply, Petitioner states "I wouldn't have voluntar[ily] pleaded guilty if my charge wasn't reduce[d], I would have continue[d] with the trial. But I had no other choice, but to plead guilty after the charge was reduce[d] or get found guilty by the jury and risk getting more time than they were offering me which I didn't want at all." (ECF No. 10 at 4.)

What Petitioner describes, however, is not deficient performance but the essence of a plea bargain agreement: here, the State offered a lesser charge and reduced sentencing range in exchange for Petitioner giving up his right to trial. Petitioner accepted this agreement because, as he stated, he avoided the risk of a minimum 15-year prison term. Petitioner appears to believe his

9

trial counsel should have objected to the State's offer, but any "objection" would have come in the form of Petitioner refusing the plea bargain. This Petitioner did not do. As previously discussed, the plea agreement is prima facie evidence of Petitioner's awareness of the "'relevant circumstances and likely consequences'" of his plea. *Bradshaw*, 545 U.S. at 183 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Petitioner's plea agreement also stated he understood the terms of the plea agreement, his attorney has explained the legal effects of the agreement, and he was not coerced or misled into making the plea.

Petitioner is unable to point to anything in the record which supports his allegations that counsel abandoned him in the midst of trial or coerced him into signing the plea agreement. Petitioner's conclusory and unsupported allegations of counsel's misrepresentations are not enough to establish deficient performance under *Strickland*. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). Petitioner therefore fails to establish that his guilty plea was involuntary due to any alleged deficiencies in counsel's performance.

Regardless, Petitioner also cannot show he would not have accepted the current plea and would have instead insisted on continuing the trial but for counsel's alleged errors. *Armstead*, 37 F.3d at 206. Again, such an assessment partially turns on "a prediction of what the outcome of a trial might have been." *Id*. There is little about the trial in the record; Petitioner alleges that he and counsel "had the upper hand" before the State made its plea offer. (ECF No. 10 at 2.) In signing the waiver and stipulations in the plea agreement, the record indicates counsel fully explained to Petitioner his rights and the plea agreement and that Petitioner understood the charge he was pleading to and the sentencing rage, which included a maximum sentence (10 years) that was five

years lower than the minimum sentence (15 years) for the indicted charge. Thus, based on the record before the Court, it appears unlikely Petitioner would have chosen to continue the trial.

The evidence before the Court supports a finding that Petitioner entered into his plea voluntarily, knowingly, and intelligently. Further, Petitioner has failed to show that his counsel's actions with regard to the plea agreement were deficient or that, but for his attorney's actions, he would have chosen to continue his trial. Petitioner has therefore failed to establish a valid IAC claim. *Hill*, 474 U.S. at 58. As a result, federal habeas relief should be denied because Petitioner fails to meet his burden of proof under the AEDPA. 28 U.S.C. § 2254(d).

### IV. Recommendation

The undersigned recommends that the District Court **DENY** Petitioner's Petition for Writ of Habeas Corpus.

### V. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the

petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the undersigned recommends that the Court should not issue a certificate of appealability.

## VI. Objections

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

SIGNED this 26th day of October, 2020.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE